# UNITED STATES DISTRICT COURT
for the
**Western District of Kentucky**
**Louisville Division**

| | |
|---|---|
| Amelia Adams )<br>    *Plaintiff* )<br>  )<br>v. )<br>  )<br>Cavalry Portfolio Services, LLC )<br>    *Defendant* )<br>Serve: )<br>    CT Corporation System )<br>    306 W. Main Street )<br>    Suite 512 )<br>    Frankfort, KY 40601 )<br>  )<br>Cavalry SPV I, LLC )<br>    *Defendant* )<br>Serve: )<br>    CT Corporation System )<br>    306 W. Main Street )<br>    Suite 512 )<br>    Frankfort, KY 40601 )<br>  ) | Case No. 3:15-cv-564 |

## CLASS ACTION COMPLAINT
## and DEMAND FOR JURY TRIAL

### INTRODUCTION

1. This is an action by Kentucky consumer Amelia Adams ("Adams") seeking injunctive relief, declaratory relief, and damages for herself and on behalf of all similarly-situated Kentucky citizens for Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.,* which prohibits debt collectors from engaging in abusive, deceptive, and unfair collection practices, and for recovery of usurious interest imposed and collected by Defendants Cavalry Portfolio Services, LLC ("CPS") and Cavalry SPV I, LLC ("Cavalry").

2. CPS and/or Cavalry attempted to collect an amount on a debt from Plaintiff Adams that neither any legal right to recover from her. In particular, CPS and/or Cavalry reported false negative credit information concerning Ms. Adams to one or more consumer reporting agencies that overstated the actual maximum amount that Ms. Adams could possibly owe on the debt over $400.00. CPS and/or Cavalry reported negative information concerning Ms. Adams and the other members of the class in order to collect a debt from her and the class. These and other acts violate the FDCPA. Ms. Adams seeks damages and declaratory relief.

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, the FDCPA, 15 U.S.C. §1692k(d), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## PARTIES

4. Plaintiff Amelia Adams is a natural person who resides in Oldham County, Ky. Ms. Adams is a "consumer" within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(3).

5. Defendant Cavalry Portfolio Services, LLC is a foreign limited partnership, which has registered with the Kentucky Secretary of State, and is engaged in the business of purchasing debt from creditors and collecting these debts in this state and/or collecting debts on behalf of other debt collectors such as Cavalry. Cavalry's principal place of business is located in Valhalla, NY 10595.

6. CPS is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).6.

7. Defendant, Cavalry SPV I, LLC, is a foreign limited liability company which has registered with the Kentucky Secretary of State. Cavalry is engaged in the business of purchasing debt from creditors and collecting these debts from consumers in this state. Cavalry's principal place of business is located at 500 Summit Lake Drive, Suite 400, Valhalla, NY 10595.

8.  Cavalry regularly collects or attempts to collect debts owed or due or asserted to be owed or due another and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6).

## FACTS

9.  On September 2014, Ms. Adams obtained a copy of her consumer credit report from Trans Union, LLC.

10. Ms. Adams's Trans Union consumer credit report includes negative credit information furnished by CPS in connection with a charged-off credit card debt originated by HSBC Bank Nevada, N.A. ("HSBC"), with an account number beginning with 1780.

11. Ms. Adams used the HSBC credit card account exclusively for personal, family, and household purposes, therefore the HSBC credit card debt is a "consumer debt" within the meaning of the FDCPA.

12. HSBC (or Capital One Bank (USA), N.A. as purchaser of the Account)[1] closed the HSBC credit card account and charged off the account as business loss in the amount of $2,728.00.

13. As part of the charge-off transaction HSBC and/or Capital One ceased charging and accruing interest on the debt, thereby affirmatively waived all and any right it had to charge any interest on the Account under Kentucky law. *See Stratton v. Portfolio Recovery Associates, LLC* 770 F.3d 443 (6th Cir. 2014).

14. The decision by HSBC and/or Capital One to cease charging contract interest on the charged-off credit card debt was knowing, intentional and an affirmative waiver of its/their right to interest for sound and prudent business reasons, including: relief from the burden of sending

---

[1] Capital One agreed to purchase and acquire HSBC's portfolio of United States credit card accounts in August 2011. http://press.capitalone.com/phoenix.zhtml?c=251626&p=irol-newsArticle&ID=1858698 (visited June 13, 2015).

periodic statements on the account; to get favorable tax benefits from treating the debt as a loan loss; minimizing loan-loss reserves; and for good customer relations. *See McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 524-26 (E.D. Mich. 2013).

15. Upon information and belief and based upon review of Ms. Adams' Trans Union credit report, HSBC and/or Capital One sold and assigned Ms. Adams' charged-off credit card debt to Cavalry or Cavalry's predecessor.

16. Upon information and belief and based on review of Ms. Adams' Trans Union credit report, the face amount of the HSBC credit card debt shown due at the time the Account was sold and assigned by HSBC and/or Capital One to Cavalry or Cavalry's predecessor was still $2,728.00.

17. Upon information and belief, Cavalry paid less than five cents ($.05) on the dollar to acquire Ms. Adams' HSBC and/or Capital One credit card debt, or no more than $140.00 for a debt with a face amount of due of $2,728.00.[2]

18. CPS and/or Cavalry furnished negative credit information concerning Ms. Adams and the HSBC and/or Capital One credit card debt to one or more consumer reporting agencies in an attempt to collect a "debt" from Ms. Adams within the meaning of the FDCPA. *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'").

19. As of August 2014, CPS and/or Cavalry was falsely reporting that $3,147.00 was the current amount due on the former HSBC and/or Capital One credit card debt, which is $419.00

---

[2] "Analysis of the prices debt buyers paid for debt purchased in more than 3,400 portfolios showed that the average price was 4.0 cents per dollar of debt face value." *Structure and Practice of the Debt Buying Industry* at ii, FTC (January 2013) https://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf (visited June 13, 2015).

*more* than the original charged off amount of $2,728.00 and at least $279.00 more than Cavalry paid to acquire the debt.

20. The negative credit information furnished by CPS and/or Cavalry to one or more consumer reporting agencies is false because Ms. Adams owes no more than the charge-off amount of $2,728.00 on the HSBC and/or Capital One credit card debt.

21. CPS and/or Cavalry misrepresented the amount owed on the HSBC and/or Capital One credit card debt by falsely reporting that $3,147.00 was the amount due on the HSBC and/or Capital One credit card debt as of August 2014.

22. CPS and/or Cavalry furnished false negative credit information to one or more consumer reporting agencies by falsely representing that $3,147.00 was the total amount due on the HSBC and/or Capital One credit card debt.

23. As of the date of the filing this complaint, neither CPS nor Cavalry has brought suit against Ms. Adams to collect the HSBC and/or Capital One credit card debt from her.

24. As of the date of the filing of this complaint, neither CPS nor Cavalry has a valid judgment against Ms. Adams that awards either the right to collect any accrued interest or fees on the HSBC and/or Capital One credit card debt.

25. In August 2014, in connection with collection of the HSBC and/or Capital One credit card debt, neither CPS nor Cavalry could legally collect from Ms. Adams an amount greater than the charged-off balance of $2,728.00.

26. CPS and/or Cavalry violated multiple provisions of the Fair Debt Collection Practices Act by **(i)** falsely representing $3,147.00 as the current amount due on Ms. Adams' charged-off HSBC and/or Capital One credit card debt as of August 2014, **(ii)** furnishing false negative credit information to one or more consumer reporting agencies by falsely representing

that $3,147.00 was the current amount due on the HSBC and/or Capital One credit card debt as of August 2014, and **(iii)** attempting collect an amount greater from Ms. Adams on the HSBC and/or Capital One credit card debt than either CPS or Cavalry could legally collect from her.

27. Upon information and belief, CPS and/or Cavalry similarly misrepresented the amount due on charge-off debt concerning hundreds or thousands of Kentucky consumers and charged-off debts purchased by Cavalry and serviced by CPS.

28. Upon information and belief, CPS and/or Cavalry furnished similar false negative credit information to consumer reporting agencies concerning hundreds or thousands of Kentucky consumers and charged-off debts purchased by Cavalry and serviced by CPS.

29. Upon information and belief, CPS and/or Cavalry collected and attempted to collect more than was legally owed on charged-off credit card debts from hundreds or thousands of Kentucky consumers and charged-off debts purchased by Cavalry and serviced by CPS.

## CLASS ALLEGATIONS

30. Plaintiff Amelia Adams brings this action individually and as a class action on behalf of all persons in the Commonwealth of Kentucky similarly situated.

31. These persons comprise the following:

**Class:** All Kentucky citizens against whom Defendants Cavalry Portfolio Services, LLC ("CPS") and/or Cavalry SPV I, LLC ("Cavalry"), or their agents, employees, or representatives, within one year of the date of filing this complaint:

**(a)** furnished negative credit information to one or more consumer reporting agencies concerning the class member in connection with a charged-off credit card debt purchased by CPS or Cavalry;

**(b)** represented the amount due on the charged-off credit card debt was greater than the

face amount of the debt on the date that the debt was charged off by the original creditor; and/or

**(c)**   collected or attempted to collect more than was legally owed on charged-off credit card debt by falsely reporting to one or more consumer credit reporting agencies a greater amount was owed on charged-off debts than either CPS or Cavalry could legally collect.

32.   This action seeks actual damages and the maximum statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2), be awarded to Plaintiff and all members of the class for CPS and/or Cavalry's violation of the FDCPA.

33.   This action also seeks declaratory relief from this Court declaring that CPS and Cavalry have no legal right to represent or furnish negative credit information to consumer credit reporting agencies that the amount owed on a charged-off credit card debt owed by Kentucky consumers is greater than the face amount due on the debt on the date of charge off.

34.   The class so represented by Plaintiff Amelia Adams in this action, and of which she herself is a member, consists of those persons defined above and is so numerous that joinder of individual members is impracticable.

35.   Plaintiff's claims are typical of the claims of the class.

36.   There are common questions of law and fact in this action that relate to and affect the rights of each member of the class, and the relief sought is common to the entire class. In particular, all class members have the same issue of law in common: whether CPS and/or Cavalry misrepresented the amount owed on charged-off credit card account debt owed by each member of the class, and whether CPS and/or Cavalry furnished false negative credit information to consumer credit reporting agencies by misrepresenting the amount owed on charged-off credit card account debt owed by each member of the class.

37. There is no known conflict between Plaintiff and any other members of the class with respect to this action, or with respect to the claims for relief herein set forth.

38. Plaintiff is the representative party for the class and is able to, and will, fairly and adequately protect the interest of the class.

39. Plaintiff's attorneys are experienced and capable in the field of consumer rights, including FDCPA violations.

40. Plaintiff's attorneys have successfully represented other claimants in similar litigation.

41. The action is properly maintained as a class action in that the prosecution of separate actions by individual class members creates a risk of individual adjudications that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interest.

42. This action is properly maintained as a class action because the prosecution of separate actions by individual members of the class would create risk of varying individual adjudications, which would establish incompatible standards of conduct for Defendant.

43. This action is properly maintained as a class action inasmuch as the questions of law and fact common to the class members predominate over any questions affecting only individual members; a class action is superior to other methods available for the efficient adjudication of the controversy; the relief sought by all members of the class will be effective and appropriate for the entire class; and all members of the class have a right to damages or other relief that may be readily computed in each case or otherwise readily determined.

44. The identity of each individual member of the class can be ascertained from the books and records maintained by Defendants.

45. Because many of the persons who comprise the class in this case may not be aware of their rights, or may not be in a financial position to readily assert their rights, and because relegation of their claims to individual actions would result in an unreasonable multiplicity of suits and a corresponding burden on this and other courts, a class action is far superior to all other methods for a fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### Violations of the Fair Debt Collection Practices Act

46. The above-described actions by CPS and/or Cavalry constitute violations of the Fair Debt Collection Practices Act including, but are not limited to violations of 15 U.S.C. § 1692e and 15 U.S.C. § 1692f and/or one or more subsections of each statute by **(i)** misrepresenting the amount owed on a charged-off credit card debt, **(ii)** by furnishing false credit information to one or more consumer reporting agencies concerning a charged-off credit card account debt owed by Ms. Adams and charged-off credit card debts owed by the members of the class, and **(iii)** collecting or attempting to collect an amount greater on a charged-off credit card debt than either CPS or Cavalry could legally collect.

### Declaratory Relief

47. An actual case and controversy exists between the parties as to the amount due and legally collectible in connection with HSBC and/or Capital One credit card debt in the negative credit information concerning Ms. Adams and the HSBC and/or Capital One credit card debt that CPS and/or Cavalry furnished to one or more consumer reporting agencies.

48. An actual case and controversy also exists between the parties as to whether reporting false credit information concerning a debt to consumer credit reporting agencies violates the FDCPA.

49. Therefore, the Court should DECLARE that—absent a valid judgment awarding interest on the HSBC and/or Capital One credit card debt—that the charge-off amount of $2,728.00 is the maximum amount that CPS or Cavalry can recover from Ms. Adams on the HSBC and/or Capital One credit card debt.

50. Therefore the Court should DECLARE that a debt collector's furnishing false negative credit information to consumer credit reporting agencies concerning consumers and consumer debt violates the Fair Debt Collection Practice Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Amelia Adams requests the Court grant her relief as follows:

1. Declare that absent a valid judgment awarding accrued interest or fees on the HSBC and/or Capital One credit card debt, the charge-off amount of $2,728.00 is the maximum amount that CPS or Cavalry can recover from Ms. Adams on the HSBC and/or Capital One credit card debt;

2. Declare that a debt collector violates the FDCPA by furnishing false negative credit information to consumer credit reporting agencies concerning consumers and consumer debt.

3. Award the maximum amount of statutory damages for each member of the class provided under 15 U.S.C. §1692k;

4. Award Plaintiff Attorney's fees, litigation expenses and costs;

5. Award Plaintiff and member of the class actual damages under 15 U.S.C. §1692k;

6. A trial by jury; and

7. Such other relief as may be just and proper.

Respectfully submitted,

/s/ James H. Lawson
**James H. Lawson**
*Lawson at Law, PLLC*
115 S. Sherrin Avenue, Suite 4
Louisville, KY 40207
Tel: (502) 473-6525
Fax: (502) 473-6561
james@kyconsumerlaw.com

**James McKenzie**
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Avenue, Suite 4
Louisville, KY 40207
Tel: (502) 371-2179
Fax: (502) 257-7309
jmckenzie@jmckenzielaw.com